1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
8                                   AT SEATTLE

9    VERNON ELKINS, JR.,

10                    Plaintiff,

11          v.                                    Case No.  C08-1466RSL

12   NORTH SEATTLE COMMUNITY                      ORDER GRANTING MOTION
     COLLEGE, *et al.*,                           FOR SUMMARY JUDGMENT
13
                      Defendants.
14

15

16                              **I.  INTRODUCTION**

17          This matter comes before the Court on a motion for summary judgment filed by

18   defendants North Seattle Community College ("NSCC" or the "college"), Ronald LaFayette,

19   David Bittenbender, Bruce Kieser, and Jason Francois (collectively, "defendants").[1]  Defendants

20   request that the Court dismiss all claims filed by NSCC employee Vernon Elkins, Jr., who

21   asserts various claims arising out of his employment.  Plaintiff is proceeding *pro se.*

22          For the reasons set forth below, the Court grants defendants' motion.

23                              **II.  DISCUSSION**

24   **A.     Background Facts.**

25   _____

26          [1] The individual defendants are, respectively, the President of the College, the Human
     Resources Administrator, the Director of Facilities and Plant Operations, and a supervisor.
27

28   ORDER GRANTING MOTION
     FOR SUMMARY JUDGMENT - 1

1    NSCC has continuously employed plaintiff since 1977 in a maintenance/janitorial

2  capacity.  Plaintiff had a history of chronic tardiness and absenteeism for which he had been

3  disciplined several times.  In 2006, plaintiff requested an accommodation for what he called a

4  "sleep disorder."  Declaration of David Bittenbender, (Dkt. #24) ("Bittenbender Decl.") at ¶ 8.

5  The college received a letter dated October 24, 2006 from a nurse practitioner stating that she

6  had diagnosed plaintiff with sleep apnea and requesting a shift change from his current 7:30 a.m.

7  to 4:30 p.m. schedule to 11:00 a.m. to 7:00 p.m.  In response, the college (1) offered to allow

8  plaintiff to start work at 8:00 a.m., which coincided with the mandatory safety meeting for the

9  Facilities and Plant Operations Staff, and (2) requested that plaintiff provide paperwork from his

10  physician to determine if he was entitled to an accommodation and/or leave under the Family

11  and Medical Leave Act ("FMLA").  On December 7, 2006, the college received an FMLA form

12  from plaintiff's physician indicating that plaintiff has sleep apnea/sleep disorder that would

13  require that "his work day starts irregularly at a later time."  Id., Ex. C.

14    The college determined that if it permitted plaintiff to work from 11:00 a.m. to 7:30 pm.,

15  he would work unsupervised for three hours at the end of his shift.  Based on plaintiff's history

16  of performance problems and absenteeism/tardiness, the college determined that he could not

17  work unsupervised.  Bittenbender Decl. at ¶ 17.  Instead, the college permitted plaintiff to start

18  his work day at 11:00 a.m. as requested, and to finish at 4:30 p.m. like other Maintenance

19  Mechanic I employees.  Plaintiff was permitted to work the alternate schedule on a trial basis for

20  approximately five weeks.  At the end of the trial period, college staff determined that plaintiff's

21  late start time was unworkable because he missed the 8:00 a.m. meeting, which meant that he

22  missed (1) the daily safety briefing, (2) the morning's assignment of duties to all departments

23  (including maintenance, plant engineering, and grounds), which included the opportunity for

24  team coordination; (3) and the assignment of work orders, which are based on staff availability.

25  Id., Ex. D.  Furthermore, the college explained that supervision was not often available when the

26  adjusted shift started, which interfered with new or revised work orders.  Id.  Those issues were

27

1  complicated by the fact that even with the later start time, plaintiff continued to be late or absent

2  from work.  As a result, the college offered plaintiff a reclassification to a Custodian I position in

3  the night shift.  Plaintiff accepted the position and continues to occupy it.  Plaintiff contends, and

4  defendants do not deny, that the Custodian I position is a lower classification and pay grade than

5  plaintiff's former position.

6  **B.      Summary Judgment Standard.**

7          Summary judgment is appropriate when, viewing the facts in the light most favorable to

8  the nonmoving party, the records show that "there is no genuine issue as to any material fact and

9  that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the

10  moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

11  fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file,

12  "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S.

13  317, 324 (1986).

14          All reasonable inferences supported by the evidence are to be drawn in favor of the

15  nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

16  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary

17  judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

18  626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the

19  non-moving party's position is not sufficient."  Triton Energy Corp. v. Square D Co., 68 F.3d

20  1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving

21  party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  Id.

22  at 1221.

23  **C.      Plaintiff's Subsequent Motions.**

24          After defendants filed their motion for summary judgment and after the noting date on

25  that motion had passed, plaintiff moved to amend his complaint and moved for a continuance.

26  The Court grants the motion to amend because it is unopposed, leave should be freely given, and

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 3

1  the amended complaint does not alter the nature of plaintiff's claims.  The Court will construe

2  the motion for summary judgment as being directed towards the amended complaint.

3      The motion for a continuance is not received as favorably.  Plaintiff's motion consists of a

4  mere three sentences, and states in conclusory fashion that plaintiff "has not yet been able to do

5  six depositions and discovery is still not finished."  Plaintiff's Motion for a Continuance.

6  Plaintiff's vague request for a continuance does not meet the strictures of Federal Rule of Civil

7  Procedure 56.[2]  Plaintiff does not state what the requested discovery will reveal or how it will

8  defeat summary judgment.  His vague motion is insufficient to justify a continuance.  See, e.g.,

9  Tatum v. City & County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party

10  requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that

11  further discovery would reveal, and explain why those facts would preclude summary

12  judgment.").  Accordingly, plaintiff's motion for a continuance is denied.

13  **D.      Defendants' Motion for Summary Judgment.**

14      Other than moving to amend the complaint and for a continuance, plaintiff has not

15  substantively opposed the motion for summary judgment.  Pursuant to Local Rule 7, the Court

16  construes plaintiff's failure to respond to the motion as a sign that it has merit.

17      The analysis of plaintiff's claims is complicated by the fact that his amended complaint is,

18  in places, vague and rambling.  It appears that plaintiff is asserting claims for failure to

19  accommodate and discrimination based on his disability in violation of the Americans with

20  Disabilities Act ("ADA"), violation of the Family and Medical Leave Act ("FMLA"),

21  harassment, and retaliation for filing a complaint under the Washington Industrial Safety and

22  Health Act ("WISHA").

23      As an initial matter, plaintiff has not shown that he is disabled for purposes of the ADA.

24  _____

25      [2] Plaintiff's motion to amend his complaint identifies three potential deponents: "Dr. Cox,
ARNP Gail Ketzel, and Maintenance Mechanic I Matthew Davenhall."  Amended Complaint at

26  ¶ 12.  However, the amended complaint does not include any explanation of what information

27  plaintiff would seek from them or the relevance of the information.

28  ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2). The Court will assume that plaintiff's sleep disorder is an impairment.[3] Although plaintiff has not identified any major life activity that is substantially limited, the Court will assume that he is contending that he is limited in his ability to sleep. However, plaintiff has not shown that he is "substantially limited" in that area. Plaintiff's physician noted on the FMLA form that plaintiff is "intermittently incapacitated" without any details. Bittenbender Decl., Ex. C. Plaintiff did not file a declaration, and his amended complaint includes no details about any limitations caused by his impairment. Cf. MacGovern v. Hamilton Sunstrand Corp., 170 F. Supp. 2d 301, 310 (D. Conn. 2001) (finding that a plaintiff who suffered from seasonal affective disorder was not substantially limited in his ability to sleep because he did not present evidence "of a limitation greater than that which the average person encounters"). Because plaintiff has not met his burden of showing that his impairment substantially limits any major life activity, he has not shown that he is disabled under the ADA.

Even if plaintiff were disabled, he has not shown that defendants failed to accommodate him. Although neither party raised the issue, plaintiff's ADA claim may be time barred to the extent that it is based on events that occurred more than 180 days before he filed his EEOC charge. See, e.g., Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 823 n.12 (9th Cir. 2001); Amended Complaint at p. 1 (stating that he filed an EEOC charge in 2006). As for the alleged failure to accommodate in 2006, the college offered plaintiff an accommodation, an alternate position with a later start time, that was consistent with his physician's statement. Although plaintiff might have preferred an alternate schedule in his former position, defendants were not required to provide plaintiff with his preferred accommodation. See, e.g., Zivkovic v. S. Cal.

---

[3] Plaintiff's amended complaint also references other health issues, including high blood pressure, back pain, and "carpal tunnel," but does not explain how, or even if, those conditions affect any life activities. Amended Complaint at ¶ 13.

1  Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an

2  employee the accommodation he requests or prefers, the employer need only provide some

3  reasonable accommodation.") (internal citation and quotation omitted).  A transfer to a vacant

4  position may be a reasonable accommodation.  42 U.S.C. § 12111(9)(B).  The defendants

5  reasonably determined that based on plaintiff's history of performance problems, which plaintiff

6  does not dispute, he could not work a significant portion of his shift unsupervised.  Bittenbender

7  Decl. at ¶ 20, Ex. D.  Defendants were not required to provide plaintiff with an unworkable

8  accommodation.  Nor has plaintiff provided any evidence to undermine defendants' contention

9  that an essential function of the position was attending the mandatory morning safety and

10  coordination meeting.  By providing plaintiff with an accommodation that was consistent with

11  his physician's recommendation, defendants reasonably accommodated plaintiff's alleged

12  disability.

13      Plaintiff also contends that defendants discriminated against him based on his disability.

14  However, he has not identified any other employee in his position who was permitted to work a

15  schedule with a late start time.  Furthermore, although plaintiff contends that other employees

16  have been permitted to work unsupervised, he has not shown that those employees experienced

17  problems with performance, absenteeism, and tardiness as plaintiff did.

18      Plaintiff argues that defendants violated the FMLA when they "ended FMLA without

19  justification."  Amended Complaint at p. 9.  Plaintiff was never on FMLA leave, so leave could

20  not have ended.  To the extent that plaintiff is referring to the end of his modified schedule,

21  plaintiff's transfer to the night shift was entirely consistent with the notes from his health care

22  providers, who indicated a need for a later start time.  Accordingly, defendants did not violate

23  the FMLA.

24      Plaintiff also contends that defendants retaliated against him after he filed a WISHA

25  complaint and harassed him both because of that complaint and his disability.  He claims to have

26  been excluded from safety meetings and "accused" of various safety and performance

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 6

shortcomings. Amended Complaint at p. 6. However, plaintiff has not shown that the concerns

regarding his performance were actually related to his WISHA complaint or his disability. In

fact, he has not shown that the individual defendants were aware of his WISHA complaint.

Moreover, the amended complaint is devoid of any details about when the alleged WISHA

complaint was made, what it entailed, and when he was allegedly retaliated against. Plaintiff's

conclusory statements fail to show that his allegations are timely or that defendants retaliated

against him. See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (explaining that "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Finally, although plaintiff asserts claims for "blacklisting" and "defamation," he has not

identified any false statements defendants made or to whom they were made. Accordingly,

those claims fail.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' motion for summary

judgment (Dkt. #22). The Clerk of the Court is directed to enter judgment in favor of defendants

and against plaintiff.


DATED this 3rd day of November, 2009.


Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7